PUERTO RICO MARITIME SHIPPING AUTHORITY, Plaintiff,

v.

Yoram ALMOGY, Star Lines International Shipping, Inc., American Bulk Cement Systems, Inc., Star Lines Equipment, Inc., Shipping Services, Ltd., Star Lines Transportation, Ltd., Star Lines Europe Container Service, Euro-Star Container Shipping, Ltd., Star Lines Overseas Shipping, Ltd., Star Lines Aktiengesellschaft Hamburg, Iran Star Lines, Ltd., Star Lines International Corp., Star Lines Shipping Co., Inc., Star Lines Container Shipping, Ltd., Star Lines, Ltd., Star Line Iran Co., APF, Ltd., Four G Investment, Inc., Unnamed Trust,

and

The Islamic Republic of Iran, Defendants.

80 Civ. 2457 (MEL).

United States District Court, S. D. New York.

March 26, 1981.

Proskauer, Rose, Goetz & Mendelsohn, New York City, Galland, Kharasch, Calkins & Short, Washington, D. C., for plaintiff.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, for defendant Four G Inv. Group, Inc.; Peter Fleming, Jr., Eliot Lauer, Philip M. Chiappone, New York City, of counsel.

LASKER, District Judge.

Yoram Almogy and Four G Investment, Inc. move to dismiss the complaint for lack of personal jurisdiction. Puerto Rico Maritime Shipping Authority ("PRMSA") moves to declare that the service of process on APF, Ltd. was valid under Rule 4(i)(1)(D) of the Federal Rules of Civil Procedure.[1]

### I.

This action arises out of the termination of an agency agreement between PRMSA and Star Lines, Ltd. Pursuant to the agreement, in connection with PRMSA's common carrier service operated between the United States east coast and the Persian Gulf, Star Lines, Ltd. acted as PRMSA's agent in soliciting and booking cargo, collecting monies, and conducting port and cargo operations in foreign ports.

Disputes between PRMSA and Star Lines, Ltd. arising out of this agreement were arbitrated and the resulting award was confirmed by this court on December 27, 1979.

Star Lines, Ltd. is one corporation in a network of corporations who themselves or their parents have been owned wholly or in part by various holding companies which allegedly have been controlled and owned primarily by Yoram Almogy.

PRMSA sues to recover the arbitration award from Star Lines, Ltd., Almogy individually, and the various corporations which comprise this network. PRMSA claims that the corporations constituted a "combine which has no existence different or distinct from that of Yoram Almogy," and that the corporations were operated by Almogy as a single unit to promote his "personal business, wealth and aggrandizement." Complaint, ¶¶ 32, 33.

---

1. Four G moves to stay discovery pending the disposition of its motion to dismiss. Since that motion is disposed of by this opinion, the motion to stay is moot.

## II.

■ Almogy moves to dismiss the complaint against him on the grounds that there is no jurisdiction over him because he was a resident of London from December 1976 to May 1979, and of Haifa, Israel thereafter, and has not engaged in any acts in New York with respect to the transactions involved here except in his capacity as an officer or director of one of the corporations (Affidavit of Yoram Almogy, sworn to July 1980). He argues that he is not subject to the jurisdiction of this court based on his activities on behalf of the corporations because he is protected by the "fiduciary shield" theory. According to that doctrine of New York law, activity in New York by a corporate officer for corporate business purposes provides a basis for jurisdiction over the corporation but not over the individual.

PRMSA argues that Almogy should not be protected by "a corporate entity through which he conducted his own business and whose corporate funds he used as his own." Memorandum of Law of Puerto Rico Maritime Shipping Authority, p. 7.

■ The fiduciary shield protects an individual from personal jurisdiction only to the extent that the activities of a corporate officer or director are in furtherance of corporate business, and not to further the personal business of the individual. In *United States v. Montreal Trust Company*, 358 F.2d 239 (2d Cir.), *cert. denied*, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966), the government sued to collect taxes due from the deceased, Isidor J. Klein. Klein, the managing director of United Distilleries Ltd., a whiskey producer, allegedly had United's distribution agents direct profits to his friends and relatives, which profits the government claimed should be attributed to Klein's income. The court rejected the defendant's argument that there was no personal jurisdiction because Klein's contacts were in his corporate capacity only.

"While it is true that [the distribution agents] were the contractual agents of the corporations Klein managed, the government has charged that they were also his personal agents in a scheme to divert funds to Klein's designees. Based on the allegations and findings, Klein could not have been acting in his role as a corporate officer when he allegedly directed a course of payments to his relatives and friends. It would be ironic, indeed, if the very corporations whose funds Klein is charged with diverting were to supply him with a shield against suit for tax liability allegedly incurred in connection with this purported breach of fiduciary duty."

*Id.* at 243. *See Bastille Properties, Inc. v. Hometels of America, Inc.*, 476 F.Supp. 175, 176 (S.D.N.Y.1979); *Alosio v. Iranian Shipping Lines, S.A.*, 307 F.Supp. 1117, 1119 (S.D.N.Y.1970).

Here, PRMSA alleges that the network of corporations was controlled by Almogy to conduct his personal business and for his personal gain. If these allegations are proven, then Almogy's activities in New York on behalf of the corporations would not be protected by the fiduciary shield and he would be subject to personal jurisdiction in New York.

■ It should be noted that for purposes of this motion, PRMSA, who has not yet had full discovery, need not prove its claim that it is entitled to pierce the corporate veil to hold Almogy liable. Rather, in cases such as this, in which those facts which establish jurisdiction also establish the claim for relief, only a prima facie showing need be made to survive a motion to dismiss. *United States v. Montreal Trust Company*, 358 F.2d 239, 242 (2d Cir.), *cert. denied*, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966); *Alosio v. Iranian Shipping Lines, S. A.*, 307 F.Supp. 1117, 1120 (S.D.N.Y.1970).

■ We find that PRMSA has met that burden. It has submitted documents showing Almogy at times had total ownership and control of the corporate network, that he was the president and sole director at times of some of the corporations, and that their funds were directed to his personal use. Affidavit of David E. Dryer, sworn to October 10, 1980 and attachments.

Almogy argues that PRMSA has not shown that he transacted business in connection with the agency agreement between Star Lines, Ltd. and PRMSA for his personal benefit or in his personal capacity, and that those transactions on which PRMSA relies to show that the corporate veil should be pierced are not related to the agency agreement. However, such a showing is unnecessary to sustain jurisdiction over Almogy. PRMSA alleges that the entire business conducted by the group of corporations, including Star Lines, Ltd., was to benefit Almogy personally. It relies on transactions unrelated in a narrow sense to the agency agreement which gave rise to this lawsuit to establish a prima facie showing that the network of corporations had no existence independent from Almogy. To make that showing, PRMSA is not required to show that every transaction of business by the corporations—or even the transaction on which this action is based—benefitted Almogy personally.

Almogy argues further that PRMSA has not shown that the corporate veil should be pierced in this case. Specifically, he contends that PRMSA has not shown that his control of the corporation was used to mislead PRMSA, or that it ever believed it was dealing with Almogy personally.

The record is not clear as to whether PRMSA believed it was dealing with Almogy personally. However, PRMSA does allege that it was defrauded by Almogy who, according to PRMSA, diverted funds of the defendant corporations to his personal use. Such an allegation is sufficient to sustain the complaint against Almogy.

Accordingly, the motion to dismiss the complaint against Almogy is denied.

### III.

Four G moves to dismiss for lack of jurisdiction on the grounds that it is a Liberian corporation with offices in Switzerland which has not been authorized to do business in New York and has never transacted business in this state.

PRMSA argues that jurisdiction exists over Four G through the actions or presence of its (indirect and partly owned) subsidiary, Star Lines, Ltd. Four G responds that neither it nor Star Lines was doing business in New York at the time this action was commenced, and that Four G never transacted business in New York in connection with the agency agreement since it was organized after the agency agreement was terminated.

Four G was formed in June 1977. PRMSA alleges that Almogy gave Four G his then 68% ownership of Star Lines International Shipping Inc., the holding company which headed the pyramid of the Star Lines group of corporations; that Four G is wholly owned by an unnamed trust which was established for the benefit of Almogy and his family; and that the trust is controlled by Almogy.

Because PRMSA fails to clarify whether it claims that jurisdiction over Four G exists under section 301 or section 302 of New York Civ.Prac. Law, we have considered the application of both statutes. The distinction between the two statutes is significant in this case and deserves brief comment. Under section 301, a foreign corporation "doing business" in New York is deemed "present" and subject to personal jurisdiction here. New York's long arm statute, section 302(a), provides for jurisdiction over a foreign corporation or non-resident individual who "transacts business" here itself or through an agent. Under section 302, but not under section 301, the cause of action must arise out of the transaction of business which is the asserted basis of jurisdiction.

The New York courts have extended the reach of section 301 jurisdiction to the parent of a subsidiary who is "doing business" in New York to find that the parent is also "present" here, when the subsidiary is doing "all the business which [its parent] could do were it here by its own officials." *Frummer v. Hilton Hotels International, Inc.,* 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851, *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967), or where

.the subsidiary is a mere department of the parent and not an independent entity, *Taca International Airlines, S. A. v. Rolls-Royce of England, Ltd.*, 15 N.Y.2d 97, 256 N.Y. S.2d 129, 204 N.E.2d 329 (1965); *see Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa*, 428 F.Supp. 1237 (S.D.N.Y.1977); *Tokyo Boeki (U.S.A.), Inc. v. SS Navarino*, 324 F.Supp. 361 (S.D. N.Y.1971); *SCM Corporation v. Brother International Corporation*, 316 F.Supp. 1328 (S.D.N.Y.1970).

█ It should be noted that all of the cases cited by PRMSA on this point involve "doing business" jurisdiction under section 301, and we have found no cases which apply this doctrine to "transacting business" jurisdiction under section 302. At first, this appears to be an anomaly; however, when it is recalled that section 302 reaches a foreign corporation whose agent transacts business here on its behalf, this dichotomy would be expected. In section 302 cases, there is no need to reach a foreign corporation under the doctrine of imputing the activities of a local subsidiary to its parent because under the same set of facts which would make that doctrine applicable, the parent would be subject to section 302 jurisdiction by virtue of the activities of its "agent," the subsidiary.

█ None of these theories appears to provide a basis for jurisdiction over Four G. First, as to section 301 jurisdiction, the defendant must be doing business here at the time the action is brought, *Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa*, 428 F.Supp. 1237, 1246 n.12 (S.D.N.Y.1977); *Gaboury v. Central Vermont Ry. Co.*, 250 N.Y. 233, 165 N.E. 275 (1929), and it is undisputed that the Star Lines group of corporations ceased operating in the spring of 1979 while the action was not commenced until May 1980. Second, as to the "transaction of business" basis for jurisdiction, it appears that Four G was not formed until June 16, 1977 (Affida-

vit of Ruth Herzog, sworn to July 18, 1980). The agency agreement had been terminated two and a half months earlier. It follows that Four G could not have transacted business in New York either itself or through an agent in connection with the agency agreement which is the basis of this action.

Accordingly, the motion to dismiss by Four G for lack of jurisdiction is granted.[2]

## IV.

█ PRMSA moves to declare valid the service of process on APF, Ltd. No response to the motion has been filed.

Rule 4(i)(1)(D) of the Federal Rules of Civil Procedure provides that service of process on a foreign defendant may be made "by any form of mail, requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served." Proof of service under this subsection "shall include a receipt signed by the addressee or *other evidence of delivery to the addressee satisfactory to the court.*" Rule 4(i)(2) (emphasis added)

Lester M. Kirshenbaum, attorney for PRMSA, states in his affidavit sworn November 20, 1980, that the Clerk of the court filed certificates of mailing confirming that two copies of the summons and complaint were sent by registered mail on May 7th and May 23, 1980 to APF at 80 Broad Street, Monrovia, Liberia, the address provided by Stephen Weiss, a shareholder of APF during his deposition in a related proceeding. The envelopes containing those copies were then received by John A. St. Clair, Esq., a former attorney for APF. St. Clair states in a letter to Kirshenbaum, attached as an exhibit to the Kirshenbaum affidavit, that he believes they were sent to him by Liberian Corporation Services, Inc. which, according to St. Clair, has his address only as the person who originally arranged the formation of APF. St. Clair states that he has repeatedly instructed Liberian Corporation Services, Inc. not to send APF mailings to him.

---

2. PRMSA asks that it be permitted discovery as to jurisdictional facts before the motion to dismiss is granted. However, it is clear that further discovery would not reveal facts which could alter the facts discussed above and upon which the decision to grant the motion is based.

This evidence strongly suggests that APF was served at its business address in accordance with Rule 4(i)(1)(D). There is no evidence in the record to indicate that APF's address had changed. Furthermore, it is unlikely that mail addressed to APF would have been directly delivered to another entity (unless the Liberian post office had been so instructed by APF, in which case APF would be deemed to have received notice). A more probable inference is that the envelopes were received by APF and given to Liberian Corporation Services to be forwarded to St. Clair.

Accordingly, the motion to declare service on APF valid is granted.

Almogy's motion to dismiss is denied; Four G's motion to dismiss is granted; the motion to declare service on APF valid is granted.

It is so ordered.