**Irving BIALEK, Plaintiff,**

v.

**RACAL–MILGO, INC., Defendant.**

**No. 80 Civ. 1106(RJW).**

United States District Court,
S. D. New York.

March 3, 1982.

---

Ruben, Schwartz, Meyer & Schnall, New York City, for plaintiff; Jerrold A. Tenzer, of counsel.

Bartels, Pykett & Aronwald, White Plains, N. Y., for defendant; John R. Bartels, Jr., White Plains, N. Y., of counsel.

**ROBERT J. WARD, District Judge.**

The complaint in this action states two claims, one for defendant's alleged breach of an employment contract with plaintiff and the other based on defendant's alleged fraudulent misrepresentations that induced plaintiff to enter into this employment contract.[1] The Court's jurisdiction is founded on diversity. Plaintiff, a citizen of New York, seeks an award of compensatory and punitive damages. Defendant, Racal-Milgo, Inc. ("Racal-Milgo"), is a corporation organized under the laws of Delaware. Racal-Milgo moves pursuant to Rule 12(b)(2), Fed.R.Civ.P., for an order dismissing the complaint for lack of personal jurisdiction.[2] For the reasons hereinafter stated, Racal-Milgo's motion is denied.

### Background

This litigation has had a peripatetic pretrial history. It was commenced in the

---

1. The complaint actually purports to state three causes of action, one for breach of contract, a second for fraudulent inducement of contractual relations, and a third for what might be called "malicious breach of contract." Since it is well established that a breach of contract does not by itself give rise to an independent tort action, *Manley v. Pandick Press, Inc.*, 72 A.D.2d 452, 454, 424 N.Y.S.2d 902, 904 (1st Dep't), *appeal dismissed*, 49 N.Y.2d 981, 428 N.Y.S.2d 950, 406 N.E.2d 805 (1980), and since plaintiff has not pleaded any "special damages" that might permit the Court to characterize this cause of action as sounding in prima facie tort, *see Wegman v. Dairylea Cooperative, Inc.*, 50 A.D.2d 108, 114, 376 N.Y.S.2d 728, 735 (4th Dep't 1975), *appeal dismissed*, 38 N.Y.2d 918, 382 N.Y.S.2d 979, 346 N.E.2d 817 (1976), the Court has determined that plaintiff's "third cause of action" is best understood as a claim for punitive damages in conjunction with plaintiff's breach of contract claim. The Court recognizes that its ability to make such an award is dubious at best. *Compare Contemporary Mission, Inc. v. Bonded Mailings, Inc.*, 671 F.2d 81 at 84–85 (2d Cir. 1982)(punitive damages not available for "mere" breach of contract) *and Sanfilippo v. Metropolitan Life Insurance Co.*, 74 A.D.2d 600, 600, 424 N.Y.S.2d 511, 512 (2d Dep't 1980) (punitive damages may not be awarded in action for breach of contract) *with Decor by Nikkei International, Inc. v. Federal Republic of Nigeria*, 497 F.Supp. 893, 912 (S.D.N.Y.1980) (punitive damages may be awarded in breach of contract action where

breach is proven to have been "malicious"), *aff'd sub nom. Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300 (2d Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982).

2. Defendant contests plaintiff's assertion that he is a citizen of New York, contending that plaintiff is in fact a citizen either of New Jersey or Illinois. *See* Affidavit of John R. Bartels, Jr., Mar. 30, 1981, at 3 (plaintiff resides in Illinois); Affidavit of John R. Bartels, Jr., Mar. 25, 1980, at 6 (plaintiff resides in New Jersey). Since there has been no suggestion that plaintiff is a citizen either of Delaware, defendant's place of incorporation, or Florida, defendant's principal place of business, the Court's subject matter jurisdiction under 28 U.S.C. § 1332 is not called into question by defendant's contention that plaintiff is not a citizen of New York. This contention might provide the basis for a motion, pursuant to Rule 12(b)(3), Fed.R.Civ.P., questioning whether venue is proper in the Southern District of New York. *See* 28 U.S.C. § 1391(a)(where jurisdiction is founded only on diversity, action may be brought only in the judicial district "where all plaintiffs or all defendants reside, or in which the claim arose"). Defendant has, however, made no such motion. As a result, the Court may, for the purposes of deciding defendant's Rule 12(b)(2) motion, accept plaintiff's allegation that he is domiciled in New York.

Supreme Court of the State of New York by service of a summons and a complaint on February 4, 1980. The action was removed, without opposition, to this Court by a petition for removal filed with the Clerk of this Court on February 25, 1980. By a notice of motion filed March 25, 1980, defendant moved to dismiss the complaint pursuant to Rule 12(b)(2), Fed.R.Civ.P., alleging lack of personal jurisdiction, and pursuant to Rule 12(b)(5), Fed.R.Civ.P., alleging insufficiency of service of process. Alternatively, defendant's motion sought an order, pursuant to 28 U.S.C. § 1404(a), transferring this action to the United States District Court for the Southern District of Florida.

Defendant's motion was originally returnable April 8, 1980. By an order dated June 6, 1980, the Court extended plaintiff's time to serve and file its opposition to defendant's motion until July 8, 1980. The Court also directed defendant to serve and file answers to those of plaintiff's interrogatories that related to the issues of service of process and personal jurisdiction by June 26, 1980. In a motion returnable September 9, 1980, plaintiff moved, pursuant to Rules 37(b)(2)(E) and 37(d), Fed.R.Civ.P., for a default judgment, on the ground that defendant had failed to comply with the Court's directive relating to plaintiff's interrogatories. At a pre-trial conference held September 26, 1980, defendant stated that it had failed to comply because of its uncertainty as to whether plaintiff's theory of jurisdiction was based on Racal-Milgo's own business activities within New York or rather on the activities of Racal-Milgo's subsidiary, Racal-Milgo Information Systems, Inc. Plaintiff explained that he was relying on the former theory. The Court then ordered defendant to answer plaintiff's interrogatories, insofar as they related to whether Racal-Milgo was doing business in New York, by October 20, 1980. This order rendered plaintiff's motion for a default judgment moot. Defendant's motion was adjourned until November 11, 1980.

Plaintiff filed no opposition to defendant's motion prior to the return date. Nor did he advise the Court that defendant had failed to comply with the Court's directive regarding plaintiff's interrogatories. Accordingly, on December 23, 1980, the Court granted, as unopposed, defendant's motion to dismiss pursuant to Rule 12(b)(2), Fed.R. Civ.P. Plaintiff thereupon moved, pursuant to Rule 59, Fed.R.Civ.P., for an order vacating the Court's order of dismissal on the ground that plaintiff's failure to file any opposition to defendant's motion was the result of excusable neglect. Oral argument on plaintiff's motion was held on January 30, 1981. At the conclusion of the argument, the Court determined to grant plaintiff's motion and endorsed the motion papers accordingly.

This decision had the effect, since the Court had never reached the merits of defendant's motion, of leaving defendant's motion pending and unopposed. At the oral argument, the parties agreed, in view of the fact that plaintiff had not yet opposed defendant's motion on the merits, that the progress of this litigation would likely be accelerated if the Court were to deal immediately with the question whether this action should be transferred pursuant to 28 U.S.C. § 1404(a), while reserving, if it deemed transfer to be inappropriate, the jurisdictional question for later consideration. (Defendant conceded that it had, by then, been properly served, and accordingly withdrew its motion insofar as it relied on Rule 12(b)(5), Fed.R.Civ.P.)

The Court accepted this suggestion and plaintiff thereupon filed his opposition to the transfer branch of defendant's motion. In a memorandum decision filed July 16, 1981, the Court denied defendant's motion insofar as Racal-Milgo sought a transfer of this action to the United States District Court for the Southern District of Florida. The Court's decision further contained a briefing schedule for the personal jurisdiction branch of defendant's motion. However, after some delay, both parties determined to rest on their previous submissions to the Court.

The facts relevant to whether this Court has personal jurisdiction over defendant in this action are set forth in plaintiff's affida-

vit filed March 9, 1981, in the affidavit of defendant's counsel filed March 25, 1980, and in Racal-Milgo's answers to interrogatories filed January 7, 1981. Racal-Milgo, which is, as noted, a corporation organized under the laws of Delaware, has few business contacts with New York. It neither maintains offices nor owns real property in New York; it has no employees, representatives, or agents whose residence or place of business is situated in New York; it does not market its products in New York; it does not solicit orders in New York; it does not ship its products into New York; it is not contractually obligated to install or to repair any equipment shipped to or situated in New York. Defendant's business contacts with New York appear to be limited to the following: (1) it once participated in a syndicated loan agreement that involved, among others, two New York banks and that required defendant to maintain "compensating bank accounts" in New York; (2) it occasionally leases automobiles and pager systems in New York; (3) its employees occasionally travel to New York on business, for such purposes as to attend trade shows and to interview prospective employees; (4) it regularly places advertisements in publications sold or circulated in New York, for such purposes as to promote products manufactured by defendant or to solicit inquiries pertaining to possible employment by defendant; and (5) it occasionally places job listings with employment agencies located in New York, which agencies are hired by defendant on a fee-for-services basis.

The products manufactured by Racal-Milgo are marketed, sold, delivered, installed, and serviced in New York by Racal-Milgo Information Systems, Inc. ("Systems"), a wholly-owned subsidiary of Racal-Milgo. Systems, a corporation organized under the laws of Florida, maintains an office in New York City, where a significant number of its employees work. This office serves as a base from which Systems conducts its business throughout New York. The "business" of Systems includes soliciting and taking orders for, negotiating contracts pertaining to, coordinating shipment, delivery, and in-stallation of, and handling customer service problems involving Racal-Milgo's products.

In early 1976, plaintiff commenced discussions with Robert Half Personnel Agency, Inc. ("Robert Half"), regarding a position as corporate controller of Milgo Electronic Corporation ("Milgo"). Milgo, a corporation that was subsequently merged into Racal-Milgo, defendant herein, had hired Robert Half to secure candidates for this position. An employee of Robert Half referred the applications of ten candidates, including an application submitted by plaintiff, to Milgo. Milgo reviewed the qualifications of these candidates and scheduled interviews with them.

During May 1976, plaintiff was interviewed for the controller's position in New York City by Daniel Bronson, an officer of Milgo. Plaintiff was one of three applicants selected by Bronson for further interview. A few days later, plaintiff was interviewed for the position by Charles Weston, a Vice President of Milgo. The second interview also occurred in New York City. Subsequently, plaintiff traveled, at Milgo's request, to Milgo's offices in Miami, Florida, where he was interviewed by the two officers who saw him in New York City and by other officers of Milgo. At the conclusion of the Miami interviews, Weston offered the position to plaintiff. Milgo confirmed the offer in a letter dated June 4, 1976. Plaintiff accepted the offer shortly thereafter. After moving to Florida, plaintiff began work at Milgo's offices in Miami on June 21, 1976. His employment by Milgo ended when he was discharged on July 28, 1976.

### Discussion

With this background in mind, the Court turns to Racal-Milgo's contention that the Court lacks personal jurisdiction over it, requiring that plaintiff's complaint be dismissed pursuant to Rule 12(b)(2), Fed. R.Civ.P. Such a jurisdictional question is, of course, to be determined by reference to the law of the state where the district court sits. Rules 4(d)(7) & 4(e), Fed.R.Civ.P.; *see Marine Midland Bank, N.A. v. Miller*, 664

F.2d 899, 901 (2d Cir. 1981); *Dogan v. Harbert Construction Corp.*, 507 F.Supp. 254, 257 (S.D.N.Y.1980). Plaintiff's theory of personal jurisdiction is based alternatively on N.Y.Civ.Prac. Law § 301 ("Section 301") and N.Y.Civ.Prac. Law § 302(a) ("Section 302(a)"). The Court deals with these alternative jurisdictional arguments in turn below.

## I.  Section 301

■ Section 301 provides that a "court may exercise such jurisdiction over persons, property, or status as it might have exercised heretofore." N.Y.Civ.Prac. Law § 301. Where, as here, personal jurisdiction over a foreign corporation is at issue, New York courts apply a "doing business" test to determine whether Section 301 has been satisfied. *Saraceno v. S.C. Johnson & Son, Inc.*, 83 F.R.D. 65, 67 (S.D.N.Y.1979); *see, e.g., Delagi v. Volkswagenwerk AG*, 29 N.Y.2d 426, 431, 328 N.Y.S.2d 653, 656, 278

N.E.2d 895, 896 (1972). Under this test, personal jurisdiction is acquired only if the foreign corporation is doing business in New York in the traditional sense, that is, not occasionally or casually, but rather with a fair measure of permanence and continuity. *J. Baranello & Sons v. Hausmann Industries, Inc.*, 86 F.R.D. 151, 154 (E.D.N.Y. 1980). The plaintiff has the burden of proving that the defendant's activities meet the threshold for an assertion of Section 301 personal jurisdiction over the defendant. *Boser v. Burdick*, 62 A.D.2d 1134, 1134, 404 N.Y.S.2d 187, 188 (4th Dep't 1978).

■ While the Court is not entirely certain on this point, it appears that plaintiff concedes that Racal-Milgo itself is not doing business in New York in the traditional sense, and instead rests its Section 301 argument on the activities in New York of Systems, Racal-Milgo's wholly-owned subsidiary.[3] It is well settled that a corpora-

---

**3.** Defendant's original motion papers assumed that plaintiff was relying on Section 302(a), New York's long-arm statute, as the basis for jurisdiction. Plaintiff responded to defendant's motion by serving interrogatories that sought information as to whether Racal-Milgo was doing business in New York in the traditional sense, evidencing an intention to rely on Section 301 in addition to Section 302(a). At the pre-trial conference held on September 26, 1980, plaintiff confirmed his intention to rely on Section 301; plaintiff's counsel further stated that his Section 301 theory was based on plaintiff's contention that Racal-Milgo *itself* was doing business in New York, and did not rely on the New York-based activities of Systems, Racal-Milgo's subsidiary. As a result, the Court ordered defendant to answer only those of plaintiff's interrogatories that related to whether Racal-Milgo was doing business in New York, and to disregard any that pertained to Systems' New York activities or to the relationship between Systems and Racal-Milgo. After defendant answered the interrogatories in the manner ordered by the Court, plaintiff filed papers in opposition to defendant's motion. In these papers, plaintiff continued to rely upon both Section 301 and Section 302(a); however, he altered his Section 301 theory by focusing not on Racal-Milgo's own business activities in New York, but rather on the New York activities of Systems and the relationship between Systems and Racal-Milgo. The Court attempted to deal with any prejudice that plaintiff's abrupt change of theory might cause defendant by giving defendant leave to serve and file

papers in reply to plaintiff's opposition papers. (Defendant's counsel declined the Court's invitation.)

Plaintiff's sudden reliance on the New York business activities of Systems suggests to the Court that plaintiff no longer contends that Racal-Milgo is itself doing business in New York under Section 301. In the Court's view, plaintiff has fallen short of making the showing that would be necessary to support such a conclusion. The courts have repeatedly held that New York business contacts such as Racal-Milgo has had here do not, when considered individually, constitute the continuous and systematic course of business that warrants a conclusion that the defendant is doing business in New York in the traditional sense. *See, e.g., Cohen v. Vaughan Bassett Furniture Co.*, 495 F.Supp. 849, 851 (S.D.N.Y.1980) (solicitation of business in New York by itself insufficient under Section 301); *Grove Valve & Regulator Co. v. Iranian Oil Services Ltd.*, 87 F.R.D. 93, 95 (S.D.N.Y.1980) (maintenance of local bank accounts does not, without more, amount to "doing business" in New York); *Selman v. Harvard Medical School*, 494 F.Supp. 603, 611 (S.D.N.Y.) (mere use of defendant's goods in New York insufficient basis for personal jurisdiction under Section 301), *aff'd mem.*, 636 F.2d 1204 (2d Cir. 1980); *Saraceno v. S.C. Johnson & Son, Inc., supra*, 83 F.R.D. at 68 n. 7 (publication of advertisements, without more, has never been a basis for personal jurisdiction under Section 301); *Loria & Weinhaus, Inc. v. H.R. Kaminsky & Sons, Inc.*, 80 F.R.D. 494, 499 & n. 6 (S.D.N.Y.1978) (New York activities of de-

tion may not be subjected to the jurisdiction of the New York courts merely because a wholly-owned subsidiary of the corporation is doing business in New York in the traditional sense. *Bellomo v. Pennsylvania Life Co.*, 488 F.Supp. 744, 745 (S.D.N.Y. 1980). A plaintiff seeking to base jurisdiction over a parent corporation on the activities of its subsidiary must show not only that the subsidiary "does business" in New York, but also show either (1) that the subsidiary does all the business that its parent could do were it in New York by its own officials, making the subsidiary really an "agent" of the parent, *Frummer v. Hilton Hotels International, Inc.*, 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 44, 227 N.E.2d 851, 854, *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967), or (2) day-to-day control of the subsidiary by the parent that is so complete as to render the subsidiary, in fact, merely a "department" of the parent. *Delagi v. Volkswagenwerk AG, supra,* 29 N.Y.2d at 432, 328 N.Y.S.2d at 657, 278 N.E.2d at 897. *See general, Andrulonis v. United States*, 526 F.Supp. 183, 187 (N.D.N. Y.1981); *Puerto Rico Maritime Shipping Authority v. Almogy*, 510 F.Supp. 873, 877–78 (S.D.N.Y.1981); *Bulova Watch Co. v. K. Hattori & Co.*, 508 F.Supp. 1322, 1333–34 (E.D.N.Y.1981).

Here, plaintiff's allegations are sufficient to make out a prima facie case, which is all that is necessary at this stage of the proceedings, *see Marine Midland Bank, N.A. v. Miller, supra,* 664 F.2d at 904; *Loria & Weinhaus, Inc. v. H.R. Kaminsky & Sons, Inc., supra* note 3, 80 F.R.D. at 497, that Systems is both an "agent" of Racal-Milgo within the meaning of *Frummer* and merely a "department" of Racal-Milgo within the meaning of *Delagi. See* Affidavit of Irving Bialek, Mar. 9, 1981, at 7–10. With respect to the agency theory, plaintiff alleges that Racal-Milgo and Systems are both components of a tightly-knit commercial organization of common-owned entities, and that Systems performs all the business services in New York that Racal-Milgo could perform there by its own officials. These are precisely the facts that the courts look for in applying *Frummer's* agency test. *See, e.g., Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa*, 428 F.Supp. 1237, 1245 (S.D.N.Y.1977). Further, plaintiff has, by contending that "Racal-Milgo Information Systems, Inc." is, practically speaking, nothing more than the "name" under which Racal-Milgo does business in New York, and that Racal-Milgo does not maintain formal indicia of separateness between itself and Systems, alleged facts similar to those that other courts have relied on to hold that a subsidiary was a mere "department" of its parent within the meaning of *Delagi. See Public Administrator v. Royal Bank of Canada*, 19 N.Y.2d 127, 131–32, 278 N.Y.S.2d 378, 381–82, 224 N.E.2d 877, 879 (1967) (jurisdiction on basis of subsidiary's activities upheld under Section 301 where corporate entity was not merely subsidiary of defendant but was in fact, if not in name, defendant itself); *Taca International Airlines, S.A. v. Rolls-Royce of England, Ltd.*, 15 N.Y.2d 97, 100–02, 256 N.Y.S.2d 129, 130–32, 204 N.E.2d 329, 330–31 (1965) (jurisdiction on basis of subsidiary's activities allowed under Section 301 where defendant had failed to maintain traditional indicia of separateness between itself and its subsidiary). *See generally Katz Agency, Inc. v. Evening News Association*, 514 F.Supp. 423, 428–29 (S.D.N. Y.1981).

Defendant, while it apparently disputes plaintiff's allegations, has not rebut-

---

fendant's independent contractor cannot form basis for Section 301 jurisdiction; nor will casual or occasional physical presence of defendant's officers in New York suffice to establish jurisdiction). Even when Racal-Milgo's New York business activities are considered together, the Court is unable to conclude that the requisite Section 301 showing has been made; the record in this case does not reveal a continuous course of business in New York by Racal-Milgo, but rather a continuing series of incidental business contacts with New York. Since Racal-Milgo has not projected itself into New York commerce in any systematic or substantial way, the Court is unwilling to hold that Racal-Milgo is "doing business" in New York for the purposes of Section 301. *See generally Bush v. Stern Brothers & Co.*, 524 F.Supp. 12, 13–14 (S.D.N.Y.1981).

ted these contentions by way of an affidavit in spite of the Court's repeated invitations to do so. Under these circumstances, the Court accepts plaintiff's allegations as true and holds that Systems is both an "agent" of Racal-Milgo within the meaning of *Frummer* and a mere "department" of Racal-Milgo within the meaning of *Delagi*. This approach is in accord with the general rule that a court, in determining whether the plaintiff has sustained its burden of persuasion on a jurisdictional question, may properly rely on affidavits and depositions to establish the jurisdictional facts and should, in so doing, consider such documents in the light most favorable to the plaintiff, the non-moving party. *Marine Midland Bank, N.A. v. Miller, supra*, 664 F.2d at 904; *Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa, supra*, 428 F.Supp. at 1241. Since it is uncontested that Systems does business in New York in the traditional sense, the Court accordingly further holds, on the basis of the relationship between Racal-Milgo and Systems, that Racal-Milgo is subject to personal jurisdiction in New York under Section 301.

## II. Section 302(a)

Section 302(a) reads as follows:

*Acts which are the basis of jurisdiction.* As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

N.Y.Civ.Prac. Law § 302(a). For jurisdiction to attach under Section 302(a), it must be shown not only that defendant performed one of the acts enumerated in Section 302(a)(1)–(4), but also that plaintiff's cause of action arose from defendant's performance of that act. *McGowan v. Smith*, 52 N.Y.2d 268, 272–73, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 323 (1981). As with respect to Section 301, plaintiff has the burden of establishing by a preponderance of the evidence that defendant is subject to personal jurisdiction under Section 302(a). *Pneuma-Flo Systems, Inc. v. Universal Machinery Corp.*, 454 F.Supp. 858, 862 (S.D.N.Y.1978). At this stage of the proceedings, the Court need only determine whether, construing the pleadings and affidavits in plaintiff's favor, plaintiff has made a prima facie showing that jurisdiction is conferred by Section 302(a). *Dixon v. Mack*, 507 F.Supp. 345, 348 (S.D.N.Y.1980); *Aluminal Industries, Inc. v. Newtown Commercial Associates*, 89 F.R.D. 326, 329 (S.D.N.Y. 1980); *J. Baranello & Sons v. Hausmann Industries, Inc., supra*, 86 F.R.D. at 157. In other words, where a plaintiff has made allegations that, if proven, would support Section 302(a) jurisdiction, a defendant cannot win a Rule 12(b)(2) dismissal merely by *rebutting* such allegations in the context of a pre-trial motion; in such a case, unless the defendant's moving papers entirely *refute* the plaintiff's allegations, the defendant can only gain a Rule 12(b)(2) dismissal after the close of proof at trial. In light of the invariably close nexus between jurisdiction and the merits in Section 302(a) cases, it would be contrary to the policy of economizing judicial resources to hold a testimo-

**34**

nial hearing in Section 302(a) cases where the defendant has rebutted, but not refuted, the plaintiff's jurisdictional allegations. Otherwise, courts would frequently find themselves hearing virtually identical testimony twice, once to determine jurisdiction, and a second time to adjudicate the merits.

Here, plaintiff contends that defendant transacted business in New York, within the meaning of Section 302(a)(1), in connection with the formation of the employment contract between plaintiff and defendant, and that plaintiff's first cause of action, for breach of contract, arose out of this "transaction of business." Further, plaintiff contends that defendant committed a tortious act in New York, within the meaning of Section 302(a)(2), during the negotiations that led to the formation of this employment contract, and that plaintiff's second cause of action, for fraudulent inducement of contractual relations, arose out of this "commission of a tortious act." The Court deals in turn *infra* with these two contentions.

### A. Transaction of Business

■ Far fewer contacts with New York are needed to show that a defendant "transacts business" in New York within the meaning of Section 302(a)(1) than are necessary to show that a defendant is "doing business" in New York as that term has been interpreted in connection with Section 301. *M. L. Byers, Inc. v. HRG Productions, Inc.*, 492 F.Supp. 827, 830 (S.D.N.Y.1980). Indeed, Section 302(a)(1) has often been referred to by the courts, in contradistinction to Section 301, as a "one transaction statute." *See, e.g., J. Baranello & Sons v. Hausmann Industries, Inc., supra,* 86 F.R.D. at 157. *See generally George Reiner & Co. v. Schwartz,* 41 N.Y.2d 648, 653–54, 394 N.Y.S.2d 844, 847–48, 363 N.E.2d 551, 554–55 (1977). Chief Judge Weinstein has colorfully illustrated the difference between Section 301 and Section 302(a)(1) in this respect by commenting that "[d]oing business is to transacting business what a full length mink coat is to tennis shorts." *Bulova Watch Co. v. K. Hattori & Co., supra,* 508 F.Supp. at 1345.

■ Given this distinction, it is plain that the Court's determination whether Racal-Milgo "transacted business" in New York is not controlled by the Court's previous conclusion, *see* note 3 *supra,* that Racal-Milgo *itself* is not "doing business" in New York. Rather, the proper analysis is for the Court to consider the "totality of the circumstances" surrounding defendant's activities in New York in connection with the matter giving rise to this lawsuit, *Sterling National Bank & Trust Co. v. Fidelity Mortgage Investors,* 510 F.2d 870, 873 (2d Cir. 1975); *Selman v. Harvard Medical School, supra* note 3, 494 F.Supp. at 612, in order to determine whether defendant has voluntarily and purposefully come to New York to invoke the benefits and protection of New York law. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). If the Court answers this question affirmatively, the New York cases require it to uphold jurisdiction under Section 302(a)(1). *George Reiner & Co. v. Schwartz, supra,* 41 N.Y.2d at 653, 394 N.Y.S.2d at 847, 363 N.E.2d at 554; *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 451–52, 261 N.Y.S.2d 8, 14, 209 N.E.2d 68, 72 (1965).

In applying the approach just described to cases where, as here, the cause of action arises out of a contract, the New York courts have placed special emphasis on the locale of contract negotiations. *See, e.g., George Reiner & Co. v. Schwartz, supra,* 41 N.Y.2d at 653, 394 N.Y.S.2d at 848, 363 N.E.2d at 554; *Data Communication, Inc. v. Dirmeyer,* 514 F.Supp. 26, 30 (E.D.N.Y. 1981); *Dogan v. Harbert Construction Corp., supra,* 507 F.Supp. at 260; *Selman v. Harvard Medical School, supra* note 3, 494 F.Supp. at 612. Indeed, the courts have repeatedly held that New York-based contractual negotiations can by themselves constitute the transaction of business in New York under Section 302(a)(1) if they "substantially advanced" or were "substan-

tively important" or "essential" to the formation of the contract. *See, e.g., Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87, 91 (2d Cir. 1975); *M.L. Byers, Inc. v. HRG Productions, Inc., supra*, 492 F.Supp. at 831; *J. Baranello & Sons v. Hausmann Industries, Inc., supra*, 86 F.R.D. at 157; *National Spinning Co. v. Talent Network, Inc.*, 481 F.Supp. 1243, 1246 (S.D. N.Y.1979); *Bastille Properties, Inc. v. Hometels of America, Inc.*, 476 F.Supp. 175, 177 (S.D.N.Y.1979).

Here, the New York-based contractual negotiations occurred, as noted, during two separate interviews of plaintiff in New York by officers of Racal-Milgo. The fact that these interviews led to plaintiff being invited to Racal-Milgo's Florida offices for further interviews, at the conclusion of which plaintiff was offered the job, strongly inclines the Court to conclude that the New York interviews were "essential," within the meaning of the above-discussed line of cases, to the formation of the employment contract between plaintiff and Racal-Milgo. Such a conclusion is further supported by the fact that other applicants for the position in question were eliminated from consideration after having been interviewed in New York, and also by plaintiff's allegation, rebutted but not refuted by Racal-Milgo, that [substantively significant contractual terms were negotiated and tentatively agreed upon during the New York interviews.] On this basis, the Court determines that Racal-Milgo "transacted business" in New York within the meaning of Section 302(a)(1) when its officers came to New York to interview plaintiff and others for the controller's position. Since it is undisputed that plaintiff's first cause of action is one "arising from" this transaction of business, as that term is used in Section 302(a), the Court accordingly holds that Section 302(a)(1) provides a basis for the exercise of jurisdiction over Racal-Milgo with respect to the first of plaintiff's two causes of action.

### B. Commission of a Tortious Act

For the Court to have jurisdiction over Racal-Milgo under Section 302(a)(2) with respect to plaintiff's second cause of action, the Court must find that Racal-Milgo "commit[ted] a tortious act [giving rise to plaintiff's second cause of action] within [New York]." This language has consistently been interpreted to require not only that the plaintiff suffered the injury complained of in New York, but also that New York was where the defendant performed the act that caused the injury. *Selman v. Harvard Medical School, supra* note 3, 494 F.Supp. at 612; *see Kramer v. Vogl*, 17 N.Y.2d 27, 31, 267 N.Y.S.2d 900, 903, 215 N.E.2d 159, 161 (1966). In fraud cases, then, it is not enough under this section that the plaintiff learned of or acted upon the alleged misrepresentations while in New York; the defendant must have been present in New York when making the misrepresentation. *See Dogan v. Harbert Construction Corp., supra*, 507 F.Supp. at 262 (Section 302(a)(2) not satisfied where defendant made misrepresentation in course of telephone call placed from outside New York); *Bauer Industries, Inc. v. Shannon Luminous Materials Co.*, 52 A.D.2d 897, 897–98, 383 N.Y.S.2d 80, 80 (2d Dep't 1976) (Section 302(a)(2) not satisfied where defendant made misrepresentation in letter mailed from outside New York).

Here, plaintiff has alleged that the misrepresentations that induced him to enter into an employment contract with defendant were made by defendant's officers when they interviewed plaintiff in New York. Affidavit of Irving Bialek, Mar. 9, 1981, at 4. Such an allegation, if proven, would clearly be sufficient to establish that defendant performed the injurious conduct in New York. *See De Clercq v. Perue*, 78 A.D.2d 706, 706, 432 N.Y.S.2d 285, 286 (3d Dep't 1980); *cf. Dogan v. Harbert Construction Corp., supra*, 507 F.Supp. at 262 (no jurisdiction under Section 302(a)(2) over fraudulent inducement to contract cause of action; jurisdiction would have attached if defendant, who made alleged misrepresentation in context of contractual negotiations, had been physically present in New York at the time). Proof of this allegation

would also permit the Court to conclude that New York is the jurisdiction "where the critical events associated with the [tort] took place," meaning that New York is, under the cases, the place where plaintiff suffered the injury of which he complains regardless of whether plaintiff was then domiciled in New York. *Glacier Refrigeration Service, Inc. v. American Transportation, Inc.*, 467 F.Supp. 1104, 1108 (E.D.N.Y. 1979); *see* note 2 *supra.* Racal-Milgo has rebutted plaintiff's allegation, *see* Affidavit of John R. Bartels, Jr., Mar. 25, 1980, at 4; however, this rebuttal is, by itself, insufficient to refute plaintiff's allegation. Under the foregoing principles, then, the Court concludes that Racal-Milgo "committed a tortious act" in New York within the meaning of Section 302(a)(2) when its officers came to New York to interview plaintiff and others for the controller's position. Since it is undisputed that plaintiff's second cause of action is one "arising from" this commission of a tortious act, as that term is used in Section 302(a), the Court accordingly holds that Section 302(a)(2) provides a basis for the Court to exercise jurisdiction over Racal-Milgo with respect to the second of plaintiff's two causes of action.

### Conclusion

Plaintiff has made a sufficient showing, under both N.Y.Civ.Prac. Law § 301 and N.Y.Civ.Prac. Law § 302(a)(1) & (2), to avoid a pre-trial dismissal of this action for lack of personal jurisdiction over Racal-Milgo. Defendant's dismissal motion, insofar as it is brought pursuant to Rule 12(b)(2), Fed.R.Civ.P., is accordingly denied. This denial does not, of course, alleviate plaintiff's burden of proving the requisite jurisdictional facts at trial by a preponderance of the evidence; nor does it prejudice defendant's right to move, at the conclusion either of plaintiff's case or of the presentation of all the evidence, for a Rule 12(b)(2) dismissal on the ground that plaintiff failed to sustain this burden of proof. In light of the protracted pre-trial proceedings that have attended this litigation, it is the Court's firm desire that the case now be brought to an expeditious conclusion. Since

discovery has been substantially completed in connection with defendant's motion to dismiss, this should not be difficult to accomplish. Accordingly, discovery is to be completed by April 2, 1982, and a pre-trial order filed by April 30, 1982.

It is so ordered.