OPINION OF THE COURT
Louis B. York, J.
In this case, the court must determine whether a regional theatre company from West Virginia, by conducting auditions in New York that directly led to a contract between the company and a New York-based actress, subjected itself to New York’s long-arm jurisdiction for an action arising out of the contract. For the reasons that follow, I conclude that defendant Theatre Arts of West Virginia’s acts in New York constitute the minimum contacts necessary to permit this court to exercise its long-arm jurisdiction. Accordingly, I deny defendant’s motion to dismiss based on lack of jurisdiction.
PACTS
In March of 1990,[1] John Benjamin, defendant’s casting director, and John Yurick, Benjamin’s assistant, came to New York to audition actors for defendant’s summer productions. They participated in the Strawhat auditions, in which over 400 performers, including plaintiff Melinda Berk, tried out for parts with a number of theatre companies. Benjamin and Yurick remained in New York for four days — from March 22 to March 25 — to conduct the auditions. During that time, Benjamin and Yurick spent no more than 15 minutes with plaintiff. They did not offer plaintiff a part or engage in any negotiations with her at that time.
Back in West Virginia, defendant made its hiring decisions regarding those individuals it had auditioned in New York, Tennessee and Ohio. In May of 1990, defendant contacted plaintiff and offered her a position with the company. On May 8, defendant mailed an employment contract to plaintiff at her New York address; plaintiff signed the contract in New York and returned it to defendant through the mail.
Subsequently, plaintiff arrived in West Virginia for rehears *698 ais. There, disputes arose over casting and performance and plaintiff left the company. Then, she instituted this lawsuit for breach of contract. Defendant has appeared for the limited purpose of challenging this court’s jurisdiction over it.
STANDARD
CPLR 302 (a) (1), which governs this situation, states that a New York court has personal jurisdiction over nondomiciliaries who "transactf ] any business within the state.” This codifies the principle enunciated by the United States Supreme Court in the landmark case of International Shoe Co. v Washington (326 US 310 [1945]), that, to comport with the requirements of due process, courts can only exert their jurisdiction over those defendants who "have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice’.” (Supra, at 316.) To determine whether minimum contacts exist, courts must evaluate "the quality and nature” of the defendant’s activity within the State. (Supra, at 319.) If a New York court determines that a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum” (Hanson v Denckla, 357 US 235, 253, reh denied sub nom. Lewis v Hanson, 358 US 858 [1958]; see, Parke-Bernet Galleries v Franklyn, 26 NY2d 13, 18 [1970] [quoting Hanson]), then the State can require the nondomiciliary to respond to a suit arising out of these activities. (Kreutter v McFadden Oil Corp., 71 NY2d 460, 466-467 [1988].)
In New York, courts have stressed that CPLR 302 (a) (1) demands that a nexus exist between the defendant, the cause of action and the forum. (Longines-Wittnauer Watch Co. v Barnes & Reinecke, 15 NY2d 443, 452 [1965].) It is not enough, therefore, that a plaintiff’s unilateral acts occurred in New York.
Finally, New York courts have emphasized that the contacts must be considered in light of the entire transaction. (East N. Y. Sav. Bank v Republic Realty Mtge. Corp., 61 AD2d 1001, 1003 [2d Dept 1978]; see, Manhattan Life Ins. Co. v Stratton Syndicate, 731 F Supp 587, 592 [SD NY 1990].)[2] Despite the plethora of litigation over the meaning and application of New York’s long-arm statute, each case is sui generis, evalu *699 ated based on its unique set of facts and circumstances. (McKee Elec. Co. v Rauland-Borg Corp., 20 NY2d 377, 381-382 [1967]; Lupton Assocs. v Northeast Plastics, 105 AD2d 3, 5 [4th Dept 1984].)
DISCUSSION
With this in mind, I examine defendant’s contacts with the forum. As stated above, those contacts consist of the March auditions, the offer of employment over the telephone, the mailing of the contract to New York, and the signing of the contract by plaintiff in New York. In addition, defendant auditioned hundreds of other actors over a period of four days in the forum; concededly, defendant based its hiring decision in part on a comparative evaluation of plaintiff and the other performers auditioned.
Many of the activities occurred outside of the forum. Defendant conducted other auditions outside New York — in both Tennessee and Ohio. The rest of defendant’s activities occurred in West Virginia. There, defendant made its hiring decisions, extended its offer and wrote and signed the contract. Further, the rehearsals themselves, where the dispute arose, were in West Virginia.
Clearly, a great deal of the activities pertinent to this case took place in West Virginia, rather than New York. But, defendant’s attempts to argue that jurisdiction is proper elsewhere are not dispositive, as jurisdiction may be appropriate in more than one forum. The key, instead, is whether defendant had enough contacts in New York in connection with this cause of action that it is fair to subject it to suit here. (Longines-Wittnauer Watch Co. v Barnes & Reinecke, supra, 15 NY2d, at 458.) And, based on the activities involved here, it is fair to assert jurisdiction over defendant.
First, I note that the fact that defendant called plaintiff in New York and mailed the contract to New York is not dispositive. Courts, acknowledging how commonplace such communications are, do not weigh them heavily unless they substantially advance the negotiation process. (Interface Biomedical Labs. Corp. v Axiom Med., 600 F Supp 731, 736 [ED NY 1985].) As it is not sufficient that a contract might be signed by defendant in New York (see, Dogan v Harbert Constr. Corp., 507 F Supp 254, 261 [SD NY 1980]), I do not find that the above acts, standing alone, would confer jurisdiction.
But, by auditioning plaintiff in New York, defendant sub *700 jected itself to this court’s jurisdiction. Defendant stresses that it only evaluated plaintiff for 15 minutes, and that it did not offer her a job at that time. But the test, as stated before, is neither whether a complete transaction took place in the forum nor whether a lengthy one did. Instead, the key is whether the acts in New York substantially advanced the contract negotiations. Further, in evaluating the quality and nature of these acts, it is necessary to consider them in light of the nature of the transaction. (See, e.g., Harry Winston, Inc. v Waldfogel, 292 F Supp 473, 481 [SD NY 1968] [where defendant purchased jewelry from plaintiff and there was no lengthy negotiation process; court noted that shorter and fewer New York contacts were sufficient than would have been necessary in an intricate business transaction].) And, in a performance contract between an actor and a theatre group, the audition is at the very least an extremely crucial part of that process.
The most analogous and useful case this court found in this respect is Bialek v Racal-Milgo, Inc. (545 F Supp 25 [SD NY 1982]). In Bialek, the Southern District held that it had jurisdiction under CPLR 302 (a) (1) over defendant, a Florida-based corporation with few New York contacts, based on the fact that, in New York, defendant’s officers conducted preliminary interviews with plaintiff for an executive position with defendant. This preliminary interview process, in which defendant’s officers screened applicants in New York before inviting plaintiff to Florida for further interviews, is very similar to the case at hand, in which defendant screened auditioners in New York and elsewhere before offering plaintiff a job. The Bialek court stated: "The fact that these interviews led to plaintiff being invited to Racal-Milgo’s Florida offices for further interviews, at the conclusion of which plaintiff was offered the job, strongly inclines the Court to conclude that the New York interviews were 'essential’ * * * to the formation of the employment contract between plaintiff and Racal-Milgo.” (Supra, at 35.) Although the court noted that contract negotiations transpired in New York, it did not rely on this. Instead, these negotiations only bolstered the court’s conclusion. (Supra.)
I believe that, despite the absence of conventional negotiations between plaintiff and defendant during defendant’s trip to New York, the principles discussed in Bialek (supra) apply. Defendant conducted its entire audition of plaintiff in New York and based its decision largely on that New York audi *701 tian. Unlike the parties in Bialek, the parties in the instant case conducted no further negotiations, and defendant based its entire evaluation of plaintiff on the 15-minute meeting in New York. Thus, the New York contact was even more significant than the screening process found sufficient in Bialek.
Defendant appears to argue that the New York audition did not comprise a significant part of the negotiation process because defendant evaluated plaintiff’s performance in light of hundreds of auditions, which were conducted in three States. This contention has no merit. First, plaintiff’s audition was still a significant factor in defendant’s decision. Second, defendant auditioned many of these other actors in New York, too. In this respect, I find it significant that defendant conducted four days of auditions in New York, and looked at over 400 performers. By travelling from West Virginia to New York, defendant clearly took advantage of the unique talent pool available to it in this particular forum. This further bolsters my conclusion that defendant purposefully availed itself of the benefits and privileges of conducting business in New York.
Finally, defendant argues that it made its hiring decision in West Virginia and based it on policies independently formulated by defendant in West Virginia. This, however, does not prevent this court from exerting its long-arm jurisdiction. A defendant can no more unilaterally insulate itself from the jurisdiction of a forum where it has minimum contacts than a plaintiff can unilaterally create jurisdiction over a defendant where no jurisdiction exists.
In its memorandums of law submitted in support of this motion, defendant further argues that, even if it had contacts with New York, plaintiff’s cause of action does not "arise from” these acts performed within the meaning of New York law. (See, McGowan v Smith, 52 NY2d 268, 272 [1981].) I find no merit to this contention. A dispute arising out of the employment relationship is connected to the employment contract that gives rise to that relationship. If this court has jurisdiction over the contract it has jurisdiction over the lawsuit. (See, Bialek v Racal-Milgo, Inc., supra, 545 F Supp, at 34.) As discussed supra, defendant could not have entered into its contract with plaintiff without conducting the auditions in New York. Thus, rather than constituting a link in the chain of events such as was found insufficient in Talbot v Johnson Newspaper Corp. (123 AD2d 147, 149-150 [3d Dept 1987], affd 71 NY2d 827 [1988]), the New York contacts represent an *702 integral part of the contractual negotiations and are more than adequate to satisfy New York law. The additional New York contacts — the telephone call and mailing — though not sufficient by themselves, strengthen this court’s finding of jurisdiction.
CONCLUSION
I am aware that there are policy reasons that militate against this finding. Regional theatre groups often operate on small budgets; a policy allowing jurisdiction in the circumstances discussed above might inhibit these companies from travelling out of State to audition performers. However, the right of a plaintiff to bring a lawsuit in the forum of his or her choice is also an important one; and, actors are rarely in a better economic position to travel to litigate than the theatre groups that employ them. New York has an interest in protecting the rights of those of its residents who sustain physical or economic injuries that bear some connection to New York. (Cf., McGee v International Life Ins. Co., 355 US 220 [1957] [discussing California’s manifest interest in providing residents effective means of redress against insurance companies].) If, in the future, companies wish to litigate in the forums of their choice, they can insert forum selection clauses in their employment contracts which, absent a showing of fraud, undue influence or some other inequity, will be enforceable. (See, Luce v Edelstein, 802 F2d 49, 57 [2d Cir 1986] [law is "not unfavorable” to such clauses].)
Finally, in connection with this concern, I note that, while the burden that litigating in a forum indisputably imposes on nonresidents is important, it does not outweigh the principle that, where a defendant has had minimum contacts with the forum, a court is not violating the defendant’s due process rights by exercising its long-arm jurisdiction. Therefore, I deny defendant Theatre Arts of West Virginia’s motion to dismiss it from the proceedings.

. This recitation is based on plaintiff's motion and accompanying papers, which I treat as true for the purpose of reviewing defendant’s motion to dismiss. (Catsimatidis v Innovative Travel Group, 650 F Supp 748, 750 [SD NY 1968].) But as the facts are essentially uncontested — the dispute between the parties is entirely legal — I have referred to defendant’s papers for supplemental information, such as more specific dates.

. With the exception of the United States Supreme Court cases, all Federal cases cited herein apply New York law and rely on New York precedent.