Andy DINKO, Individually and on behalf of the members of the National Maritime Union of America, Plaintiff,

v.

Shannon J. WALL, as President of the National Maritime Union of America and Individually, et al., Defendants.

No. 75 Civ. 524 (HFW).

United States District Court, S. D. New York.

March 2, 1976.

■■■■■■■■■■■■■■■■■■■■■■

Melvin E. Rosenthal, New York City, for plaintiff.

Stanley B. Gruber, New York City, for defendants.

## OPINION

WERKER, District Judge.

This case was remanded to me by the Court of Appeals for further proceedings consistent with its opinion.[1]

Upon the original motion to vacate an order authorizing this action I dismissed the complaint upon the grounds that the plaintiff had not made a sufficient demand (the Court of Appeals reversed this conclusion) and that the plaintiff had not shown "good cause."

Before the opinion of the Court of Appeals in this case there was no existing definition of good cause as required by Title 29, section 501(b) LMRDA.

A definition has now been furnished in the following terms:

"We believe that both these policies are served if good cause in section 501(b) is construed to mean that plaintiff must show a reasonable likelihood of success and, with regard to any material facts he alleges, must have a reasonable ground for belief in their existence."[2]

The Court of Appeals based upon that definition has instructed me to articulate my reasons why in my sound discretion I came to the conclusion that the plaintiff's application did not show sufficient good cause to warrant the initial authorization to bring this action.

The gravamen of plaintiff's complaint is contained in paragraphs 9 and 15(a) through (n) in the First Cause of Action. The Second Cause of Action and the allegations made therein arise from the acts complained of in the First Cause of Action. The Second Cause of Action must necessarily be dismissed if good cause is not shown in the First Cause of Action.

No hearing was held in this matter since I concluded that none was necessary. I had available to me the deposition of the plaintiff and all of the documents with respect to the allegations of plaintiff which were refuted by defendants by documentary evidence not argument. I assumed that I was permitted to proceed on documentation outside the complaint and upon admissions made by the plaintiff and the defendants.

Paragraph 9 of the complaint purports to allege the contents of the demand contained in plaintiff's letter to the Union dated December 17, 1974. It does not.

The claims in that letter were

(a) The regular November meeting of the Union held on November 25, 1974 was invalid and unconstitutional.

(b) The vote at said meeting approving the Staff Pension Plan was invalid and unconstitutional.

(c) The change in policy was not spread in full in the National Maritime Union Pilot.

(d) The change in policy must be published in full not by description in both English and Spanish.

(e) The membership was not permitted to speak at the meeting of November 25, 1974.

There follows a demand for a complete accounting of all Union expenditures "involving the officers Staff Pension Plan."

The Constitution (as amended October 1972) of the National Maritime Union of America (NMU) provides as follows:

"Article 4

MEMBERSHIP APPROVAL

"Section 1—Principle: All decisions of the National Council, and the National Office between Conventions, which change the established policies, programs, and procedures of the Union must first be approved by the membership before they are made effective.

---

1. *Dinko v. Wall*, 531 F.2d 68 (2d Cir., 1976).  2. *Id.* at 75.

"Section 2—Method: Membership approval referred to in Section 1 of this Article shall be obtained in the following manner:

(a) The decision of the National Council and/or the National Office shall be spread in full in the NATIONAL MARITIME UNION PILOT or a special newsletter, provided that action on the decision is not required before the PILOT or special newsletter can be published and distributed to the membership. The decision shall then be read at the regular membership meeting in each Branch office operated by the Union, provided that in the event a regular membership meeting is not scheduled within the time necessary for action upon the decision, the decision shall then be read in full at a special membership meeting called for that purpose. After discussion by the membership, action upon the decision shall be taken by vote of the membership present. The approval of a majority of the total members voting in all Branches shall be required in order to make the decision operative."

"Article 24
MEETINGS

"Section 1—Regular membership meetings shall be held at Headquarters (New York Branch) and in all Branch offices of the Union at least once each month. . . . ."

Section 5 of that Article provides that minutes of the meetings of any of the Branches shall be forwarded to the National Secretary-Treasurer. It also provides that "meetings held without a quorum present may not initiate any actions where membership approval is required."

There is no provision in this Article which specifies a time for notice before a regularly scheduled monthly meeting.

■ With respect to paragraph 15(a) of the complaint and the related allegations in paragraph 9 of the complaint and the first five paragraphs of plaintiff's letter to the Union, I compared the NMU Staff Plan and the NMU Officers Plan (Exhibits 8 and 9) and came to the conclusion that the "changes" in policy set forth in the notice to all members contained in the Pilot were set forth in full within the meaning and intendment of section 2, Article 4 of the NMU Constitution. While I realize that it might be argued that the words "in full" could be construed to mean that the full text of the new plan should be set forth, in my opinion that would have been a distortion of the meaning of the requirement that the "decision" was to be set forth. The notice contained a cogent, concise explanation of the changes and made the full text available at the Branch offices. Furthermore, the same section of the Constitution which requires the decision to be spread in full also requires the decision to be read at the meeting at which the membership is to vote on its approval. The court cannot conceive that it was within the intention of the drafters of the Constitution that the Meeting Chairman must read the new plan in its entirety. To interpret the word "decision" consistently within that paragraph, the court concludes that the published explanation of the substantive changes, which is not inaccurate, incomplete, misleading or deceptive as charged by the plaintiff, satisfies the requirement that the decision be set forth in full.

With respect to paragraph 15(b), the court considered the statements of Evaristo Rodriquez and Emanuel Van Eckelen in this connection since plaintiff relied upon alleged statements to him by these gentlemen as to the availability of the proposed plan at the New York and Philadelphia Branch offices.

■ With respect to paragraphs 9 and 15(e) of the complaint and the 6th and 7th paragraphs of plaintiff's letter, I examined the minutes of all of the Branches including New York which were held on November 25, 1974 (Exhibits 10 through 36 and Exhibit 40) and came to the conclusion that all meetings were properly called and that they were conducted in accordance with Article 4. While the minutes of some of

these meetings would from the standpoint of a corporate attorney leave a great deal to be desired, they reflect in my opinion the basic requirements of the Union Constitution. Those basic requirements are the presentation of the proposed changes, an opportunity for the membership to discuss those changes and a vote by show of hands in most cases which is reflected in a count recorded in the minutes. The fact that discussion in the New York Branch was terminated after a motion was duly made and seconded to do so in no way reflected bias by the Chair. The action was not taken until there had been considerable discussion of the Plan and many members had had an opportunity to express their opposition.

It should be noted that upon a cursory examination of the minutes of the other Branches, even if the New York vote was not counted, the other Branch meetings where a quorum was present were sufficient to carry the proposed plan.

Furthermore, as to the fifth paragraph of plaintiff's letter since the meetings were regularly scheduled meetings the request for three months notice made by plaintiff was not warranted and could improperly affect the regularity of the meetings.

With respect to paragraph 15(c) of the complaint, there is no requirement under the Union Constitution that either the changes or the plans be made available to the membership in Spanish. Annexed to the complaint is a Spanish version of the spread in the Pilot. If any of the Union membership could not read English, this Spanish spread gave them notice of the "decision."

Incidentally minutes of the meetings held in Panama, Cristobal and San Juan were included in the documentation thus negating paragraph 15(n) of the complaint.

The observations made above require the conclusion that the allegations contained in paragraphs 15(a), (b), (c), (e) and (n) do not show good cause.

■ In determining whether plaintiff had good cause with respect to paragraph 15(d) of the complaint the court had reference to Title 29 sections 307(a) and 308(b) [3] which deal specifically with the rights of participants and beneficiaries under welfare and pension plans. Since Mr. Dinko is neither a participant nor a beneficiary of the Officer or Staff Plans it came to the conclusion that he had no standing to make the demand alleged in 15(d). Furthermore, under section 307(a) even a participant or beneficiary is not entitled to anything but a description of the plan.

■ The only other section under which there was a possibility that he might have standing is Title 29, section 431.[4] That

---

**3.** Section 307 states as follows:

(a) Publication of the description of the plan and the latest annual report required under this chapter shall be made to the participants and to the beneficiaries covered by the particular plan as follows:

(1) The administrator shall make copies of such description of the plan (including all amendments or modifications thereto upon their effective date) and of the latest annual report available for examination by any participant or beneficiary in the principal office of the plan.

(2) The administrator shall deliver upon written request to such participant or beneficiary a copy of the description of the plan (including all amendments or modifications thereto upon their effective date) and an adequate summary of the latest annual report, by mailing such documents to the last known address of the participant or beneficiary making such request.

Section 308(b) states as follows:

(b) Any administrator of a plan who fails or refuses, upon the written request of a participant or beneficiary covered by such plan, to make publication to him within thirty days of such request, in accordance with the provisions of section 307 of this title, of a description of the plan or an annual report containing the information required by sections 305 and 306 of this title, may in the court's discretion become liable to any such participant or beneficiary making such request in the amount of $50 a day from the date of such failure or refusal.

**4.** The entire text of section 431 is as follows:

(a) Every labor organization shall adopt a constitution and bylaws and shall file a copy thereof with the Secretary, together with a report, signed by its president and secretary or corresponding principal officers, containing the following information—

section requires the Union to file a report showing the provision made and procedures followed with respect to "participation in insurance or other benefit plans." § 431(a)(5)(C). Furthermore it requires the Union to file a detailed annual report. Section 431(c) gives any member of the Union the right to books, records and accounts necessary to verify the Union's annual report upon a showing of "just cause." Section 431(c) does not however require the Union to provide "an independent financial report or other adequate financial information." It permits the membership for "just cause" to develop that information by examination of the books and records. It is not alleged or claimed that the Union has not filed and published these annual reports as required by §§ 307 and 431. I therefore came to the conclusion that plaintiff would in no event be entitled to the demands made in the last paragraph on page 1 and the first paragraph on page 2 of his letter of December 17, 1974.

(1) the name of the labor organization, its mailing address, and any other address at which it maintains its principal office or at which it keeps the records referred to in this subchapter;

(2) the name and title of each of its officers;

(3) the initiation fee or fees required from a new or transferred member and fees for work permits required by the reporting labor organization;

(4) the regular dues or fees or other periodic payments required to remain a member of the reporting labor organization; and

(5) detailed statements, or references to specific provisions of documents filed under this subsection which contain such statements, showing the provision made and procedures followed with respect to each of the following: (A) qualifications for or restrictions on membership, (B) levying of assessments, (C) participation in insurance or other benefit plans, (D) authorization for disbursement of funds of the labor organization, (E) audit of financial transactions of the labor organization, (F) the calling of regular and special meetings, (G) the selection of officers and stewards and of any representatives to other bodies composed of labor organizations' representatives, with a specific statement of the manner in which each officer was elected, appointed, or otherwise selected, (H) discipline or removal of officers or agents for breaches of their trust, (I) imposition of fines, suspensions, and expulsions of members, including the grounds for such action and any provision made for notice, hearing, judgment on the evidence, and appeal procedures, (J) authorization for bargaining demands, (K) ratification of contract terms, (L) authorization for strikes, and (M) issuance of work permits. Any change in the information required by this subsection shall be reported to the Secretary at the time the reporting labor organization files with the Secretary the annual financial report required by subsection (b) of this section.

(b) Every labor organization shall file annually with the Secretary a financial report signed by its president and treasurer or corresponding principal officers containing the following information in such detail as may be necessary accurately to disclose its financial condition and operations for its preceding fiscal year—

(1) assets and liabilities at the beginning and end of the fiscal year;

(2) receipts of any kind and the sources thereof;

(3) salary, allowances, and other direct or indirect disbursements (including reimbursed expenses) to each officer and also to each employee who, during such fiscal year, received more than $10,000 in the aggregate from such labor organization and any other labor organization affiliated with it or with which it is affiliated or which is affiliated with the same national or international labor organization;

(4) direct and indirect loans made to any officer, employee, or member, which aggregated more than $250 during the fiscal year, together with a statement of the purpose, security, if any, and arrangements for repayment;

(5) direct and indirect loans to any business enterprise, together with a statement of the purpose, security, if any, and arrangements for repayment; and

(6) other disbursements made by it including the purposes thereof;

all in such categories as the Secretary may prescribe.

(c) Every labor organization required to submit a report under this subchapter shall make available the information required to be contained in such report to all of its members, and every such labor organization and its officers shall be under a duty enforceable at the suit of any member of such organization in any State court of competent jurisdiction or in the district court of the United States for the district in which such labor organization maintains its principal office, to permit such member for just cause to examine any books, records, and accounts necessary to verify such report. The court in such action may, in its discretion, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

The complaint does not allege any failure to either file or publish annual reports or a failure to make those annual reports available to the membership. As a matter of fact Mr. Dinko stated at his depositions that periodic financial reports were published in the Pilot.[5]

Paragraph 15(f) claims that the officers failed and refused to make available information as to "true and complete liabilities." Similar conclusory charges are made in 15(g), (h), (i), (j), (k) and (*l*). The Secretary's requirements with respect to the Union's annual report are exhaustive and specific in regard to each of these items. (*See* § 431(a) and (b).) A reading and rereading of plaintiff's deposition indicates that all of plaintiff's allegations in these several areas were allegedly based upon hearsay statements by other Union members whose names were either unknown to plaintiff or whose names could not be remembered by plaintiff. While the complaint is written upon information and belief I have come to the conclusion that the information upon which a party bases his belief must be such as to provide to an average person a reasonable cause to believe. Upon consideration of plaintiff's deposition I concluded that the information given to plaintiff and upon which he based his belief was not such as an average person would rely upon to make a claim. The information at best could be classified as rumor or what sailors know as scuttlebutt.

Lastly paragraph 15(m) alleges a failure to inform the Union that 80% of the Union's funds were on deposit with defendant Amalgamated Bank of New York. There is no requirement that officers of a Union inform the membership as to its depository nor any right on the part of the membership to dictate what depository shall be used.

The manner in which this complaint was filed and the subsequent publicity given to it and the charges made against the officers indicate at least bias on the part of the plaintiff against certain Union officers. This may be due to disappointments suf-

fered by plaintiff in the internal affairs of the Union. It may not however form the bases for charges which appear to the court to have little prospect of success upon the merits.

I therefore find upon all of the foregoing that plaintiff has not shown a reasonable likelihood of success nor has he shown a reasonable ground for the belief of the existence of the material facts alleged in his complaint. He has not shown either good cause under Title 29, section 501 nor just cause under Title 29, section 431(c). The order authorizing this action is consequently vacated and the complaint dismissed.

SO ORDERED.

---

**5.** Continued Deposition of Andy Dinko, Apr. 22, 1975, at 187.