**Andrew A. HAGAN, Plaintiff,**

v.

**Richard I. KILROY, Donald A. Bobo, Joseph A. Guerrieri, James Kelly, John Leib, L.E. Bosher, John C. Campbell, Charles S. Coleman, Robert M. Curran, William E. Granlund, John R. Jenkins, Francis, T. Lynch, E.J. Neal, Joaquin F. Otero, Richard C. Smith, Gerald Toppen, and others, Defendants.**

**No. 83 Civ. 9217 (RLC).**

United States District Court,
S.D. New York.

March 19, 1985.

Juron & Minzner, P.C., New York City, for plaintiff; Edward S. Minzner, New York City, of counsel.

Anderson Russell Kill & Olick, P.C., New York City, Zuckerman, Spaeder, Moore, Taylor & Kolker, Washington, D.C., for defendants; John H. Gross, Nicholas Zoogman, New York City, and Roger C. Spaeder, Washington, D.C., of counsel.

Abraham, Pressman & Bauer, P.C., Philadelphia, Pa., for defendant Kelly; J. Shane Creamer, Philadelphia, Pa., of counsel.

Shapiro, Shiff, Beilly, Rosenberg & Fox, New York City, for defendant Lieb; Sidney Fox, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff, a member of the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees ("BRAC"), Lodge 705 and System Board 86, instituted this action pursuant to Section 501 of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501.[1] BRAC is an unincorporated association and labor organization composed of members employed in the transportation industry throughout the United States and Canada. By order dated December 8, 1984, the court granted plaintiff leave to proceed with this litigation.

The International Union known as the Grand Lodge has its principal offices in Rockville, Maryland. The International has an International President, the chief executive officer of the Union, an International Secretary-Treasurer, eleven Vice Presidents and nine Trustees. It also has an Executive Council composed of these above named officers. Subordinate to the Grand Lodge are the various System Board units. System Board 86 has its principal offices in Philadelphia, Pa., and its members service the consolidated rail system ("Conrail") in the northeastern United States. Each System Board has its own set of officers and trustees distinct from the International. System Board 86's chief executive officer is its General Chairman. In addition, it has 14 Vice General Chairmen and a Board of Trustees. Each System Board maintains financial independence from the International by maintaining its fund in a separate bank account under the control of System Board officers. There is finally local lodges within each System Board. Plaintiff was a member of Lodge 705.

---

1. § 501. Fiduciary responsibility of officers of labor organizations reads in pertinent part:

(a) The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

(b) When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

(c) Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

Defendants are the International President, Secretary-Treasurer, eleven International Vice Presidents, nine International Trustees, the Supervisor-Trustee of System Board 86 and a Vice General Chairman of System Board 86. In the course of a hearing, February 27—March 1, 1984, when the court made clear that no action could be maintained against defendants J.J. Boyce, Robert Malcolm, Donald Purselley, Grace Vincent, D.D. Wiley and William Woods, International Trustees who took office after the alleged misconduct took place, and that no misconduct was alleged against the International Trustees in any event, plaintiff discontinued the action against the above individuals as well as Arlo Bertsch, Joseph Condo and William Flynn constituting all the International Trustees of the Grand Lodge.

Defendant John Lieb at the time the action commenced had been appointed by Richard Kilroy, International President, as Supervisor-Trustee of System Board 86 pursuant to a trusteeship imposed by the Grand Lodge on System Board 86 pursuant to § 302 of Title III of LMRDA.[2] Before being appointed to this position, Lieb had been a System Board 86 employee. The complaint alleges Lieb misappropriated System Board 86 funds by the submission of false expense statements. Defendant James Kelly, Vice General Chairman of System Board 86, is alleged to have misappropriated System Board funds in the same manner. These are the only defendants affiliated with System Board 86.

Kilroy, the International President and BRAC outside counsel, Joseph Guerrieri, are claimed to have acted to cover up the malfeasance of various officials of System Board 86 by ordering a cosmetic audit of the System Board's finances. Kilroy, in addition, is alleged to have breached a fiduciary duty to BRAC in accepting a radar detector and a silver plated coffee service from System Board 86 former General Chairman, Al Archual. The remaining defendants are apparently charged with misfeasance in failing to institute litigation immediately upon plaintiff's demand that action be instituted against Kilroy, Lieb, Kelly, Guerrieri and Donald Bobo, International Secretary-Treasurer.

In June, 1982, Kilroy received an unsigned communication from the Committee for Fair Trade Unionism alleging that Archual and the General Secretary-Treasurer, Robert McKinley, of System Board 86 had misappropriated funds from the union. Kilroy on advice of counsel decided to have an investigation and audit of System Board's 86 finances. The investigation and audit was authorized on June 25, 1982. Auditors from the International Union were sent to Pittsburg. The auditors completed auditing the bank statements, cash journals and disbursements for 1981 and for the first 6 months of 1982. The audit and investigation proceeded no further because of Archual's failure to produce his own expense account records.

In October, 1982, Archual, McKinley and 14 Vice General Chairmen of System Board 86 were advised by the United States Attorney's office in Philadelphia that the grand jury was investigating the financial affairs of the System Board 86. When the government subpoenaed all the financial records of System Board 86 in connection with this investigation, Kilroy suspended the audit to await completion of the grand jury investigation. The grand jury proceedings continued into the spring of 1983.

Under pressure to do so by Kilroy, Archual and McKinley resigned their offices on October 1, 1983. On December 29,

---

2. § 302 provides:

Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization. 29 U.S.C. § 462.

1983, McKinley pleaded guilty to falsifying financial reports submitted to the United States Department of Labor. On February 16, 1984, Archual pleaded guilty to two felony counts of embezzlement of $121,-138.45 from System Board 86. The government has since announced that its investigation has produced no further evidence of criminality.

Kilroy imposed a trusteeship on System Board 86 effective September 7, 1983, and appointed Lieb as Supervisor-Trustee of the System Board and ordered the audit to be resumed.

BRAC's international convention and election took place July 25-29, 1983, and the Kilroy slate defeated its opponents. After being reelected, Kilroy terminated plaintiff's employment as director of the BRAC Community Services Department in Paramus, New Jersey, effective September 1, 1983. Plaintiff protested his removal and requested 74 instead of the offered 50 weeks of vacation pay. He appealed to the BRAC Executive Counsel and filed a charge of age discrimination with the EEOC in October, 1983. His appeal to the Executive Council failed, and the EEOC charge apparently remains in limbo.

After instituting this action, plaintiff moved for a preliminary injunction to prohibit defendants from distributing any more of System Board 86 funds, to bar expenditure of any union funds for defense of any individuals in a criminal proceeding, to bar expenditure of union funds for defense of any defendant in this action and to bar Lieb from disbursing any of System Board funds for legal fees in defense of this action or any criminal action. Defendants' counsel advised the court that pending determination, Lieb would pay only for essential operational expenses, salaries and that no legal fees would be paid. Plaintiff was not appeased and seeks Lieb's removal, appointment of a receiver to take custody of System Board 86's property, an order for a complete financial report monthly to the Executive Council and an order to prohibit outside counsel from any further representation of BRAC officials.

Defendants opposed the motion for preliminary relief, moved to dismiss the complaint on jurisdictional grounds, and to vacate the court's December 8 order granting plaintiff leave to sue.

At the February-March hearing there was testimony that the silverplated coffee service was presented to Kilroy's wife by Archual on behalf of the System Board at a meeting of the System Board in October, 1981. The gift was made to Kilroy to commemorate his election to the Brac presidency. The plaintiff was among those present, and no complaint was made by plaintiff or by any other union representative that the gift was not appropriate until this proceeding was commenced. There was testimony at the hearing that it was traditional for the System Board to give a newly elected Grand Lodge President a gift. There was no evidence presented that the gift was paid for with System Board funds, and the coffee service is kept at Grand Lodge offices in Rockville, Md.

The radar detector was acquired by Archual and given to Kilroy. Again there was no proof that the funds used to purchase the device were those of System Board. The detector is installed in a Brac licensed automobile used for union business. Plaintiff in a post hearing brief has alleged the use of a radar detector is illegal under Maryland law. However, it is clear that the court has no role in the enforcement of Maryland law.

On September 23, 1983, after notice, a hearing on the trusteeship was held before the BRAC Executive Council. On the basis of evidence that Archual had received considerable funds as expenses not properly supported by receipts and evidence that the System Board's financial reports to the Department of Labor had been falsified, the Executive Council unanimously approved imposition of the trusteeship and reported its finding in a memorandum dated September 30, 1983.

On his assumption of duties as Supervisor-Trustee of System Board 86, Lieb advised BRAC counsel that in 1981, while working as an employee of System Board

86, he asked Archual for an increase in salary. Archual conceded that Lieb merited a raise but advised him to take it through as an increase in his expense allowance rather than through a salary increment. As a result Lieb added approximately $150 per month to his expense accounts. He ceased the practice early in 1983, and on his appointment as Supervisor-Trustee ordered the practice discontinued throughout the System Board. The funds he received in this manner were deposited by Lieb in an escrow account, and he requested an opinion from the BRAC General Counsel, William Donlen, as to the propriety of the practice. Donlen, in an opinion dated April 14, 1984, concluded that the practice did not constitute a breach of fiduciary duties by any of the recipients of funds (Lieb and 3 other employees were found to have been compensated in this way), since they had performed services, had engaged in the practice pursuant to instructions from Archual and the amount received was nominal.

On May 22, 1984, Archual was sentenced to a term of probation subject to the condition that he pay back to the union $118,938.51 in embezzled funds.

Robert McKinley, who had been charged by the government with receiving $1,467.30 through submission of false expense statements and to have split with Archual for their own personal use two union fund checks totalling $23,200 (the two checks were included in the government's listing of the funds embezzled by Archual), was also sentenced to a term of probation. McKinley, however, was not placed under restitution order by the sentencing judge, but has paid back $3,500 to BRAC. Union auditors uncovered an additional $5,321.20 which McKinley received as expense reimbursements without proper authorization.

Charles Swasy shared in one of the checks ($8,200.00) that Archual and McKinley diverted to their personal use and has admitted to receiving $2,500 through submission of false expense vouchers. He cooperated in the government's investigation. The union auditors reported an additional $3,351.00 chargeable to him for unauthorized expenditures ($3,100 in attorney's fees paid by the System Board and $251.00 in unauthorized expense reimbursements). Swasy has paid back $5,851.00. After the criminal proceedings were concluded, Kilroy removed Swasy from his position as Vice General Chairman of the System Board. Kilroy has offered to retain him as staff employee provided he made full restitution, but Swasy declined the offer.

James Kelly former Vice Chairman was not charged with embezzling any funds by the government. Kelly, however, was found by union auditors to have received $7,210.05 in unauthorized expenses, and was asked to pay back $3,651 he received from the union for attorney's fees. He has repaid $4,371.05. Kelly remains on the Board as a staff employee although no longer an officer.

BRAC filed a notice of claim with Aetna Casualty & Surety Co., the union's fidelity bond underwriter, on October 6, 1983, to recover all of these funds. On June 22, 1984, and August 30, 1984, Aetna paid BRAC, which in turn paid System Board 86, $335,072.64 which constitutes the amount of funds improperly taken by Archual, McKinley, Swasy and Kelly less the amounts received in voluntary restitution.

Since the hearing in this litigation, BRAC terminated its trusteeship of System Board 86 on May 24, 1984, and new officers and new members of the Board of Trustees have now been elected who are not defendants before the court. BRAC had recovered some $349,894.69, all of which has been turned over to System Board 86. BRAC has initiated a civil action against Archual on the basis of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, in the United States District Court for the District of Maryland. It has assigned its interest to restitution from Archual under court order to Aetna and has substituted Aetna as the real party in interest in the civil litigation.

BRAC has provided a final audit report and accounting of System Board 86 finances to all of System Board's officers. That

audit shows that the assets of the System Board increased by $66,039.00 under BRAC trusteeship.

Moreover, the System Board's newly elected General Chairman has retained Peat, Marwich, Mitchell & Co. to scrutinize the expense account statements submitted by him and other senior officers of System Board 86 for a 6 year period dating back from December 31, 1983. In an opinion letter dated July 23, 1984, the outside accounting firm found no deviations from stated BRAC expense policies, and nothing was found to evidence any irregularities.

The Department of Labor on June 15, 1984, upheld the validity of the July, 1983 election.

### Discussion

Defendants, sued in their individual capacities, have all moved to dismiss for lack of personal jurisdiction.

■ The court has neither personal nor subject matter jurisdiction over Joseph A. Guerrieri, an attorney in private practice in the District of Columbia. Guerrieri is neither a BRAC elected official nor one of its key administrative personnel as comprehended by § 501(a) and (b) and as defined by § 402(q) of LMRDA.[3]

■ Personal jurisdiction must exist as to each defendant in order for this court to invoke § 501(b) of LMRDA to enforce the statutory obligations imposed on union officials and key administrative personnel.

None of these defendants have conducted any activities in this state. *Hanson v. Denkla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). None of the defendants are New York residents, nor has any been shown to have significant contacts with or interests in the state. None are doing business or transacting business within the state, and thus none are within the reach of the New York long arm stat-ute. *Morrissey v. Curran*, 482 F.Supp. 31, 59 (S.D.N.Y.1979) (Motley, J.), *aff'd in part*, 650 F.2d 1267, 1277 (2d Cir.1981).

Kilroy's alleged breach of fiduciary duties involved receipt of gifts from the union, his acquiescence in the misappropriation of union funds and authorization of a cosmetic audit. The gifts were given in New Jersey and Pennsylvania, and the alleged misfeasance was in respect of System Board 86's finances and could have occurred only in Rockville, Md. or Pennsylvania where the System Board's principal offices are located. The misappropriation and diversion of funds attributed to Kelly occurred in Philadelphia where he is employed. Joseph Guerrieri's alleged misfeasances in respect of allowing Lieb to continue as Supervisor Trustee had to have occurred in Pennsylvania or Washington. Clearly, none of the diversions occurred in New York.

■ The injuries complained of occurred outside New York, and no wrongful act has taken place within the state nor has any acts had a significant impact on persons or property within the state. Plaintiff must make a prima facie showing that defendants are subject to personal jurisdiction within the state. *Mayes v. Leipziger*, 674 F.2d 178, 182 n. 3 (2d Cir.1982); *Bialek v. Racal-Milgo, Inc.*, 545 F.Supp. 25, 33 (S.D. N.Y.1982) (Ward, J.). Although plaintiff is a New York resident and BRAC is bargaining agent for a number of residents of New York who are Conrail employees, these factors are not sufficient to provide a basis for personal jurisdiction over defendants. In sum, the minimum contacts with New York requisite for due process in this forum is lacking. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Moreover, based on the facts outlined above there appears to be no substance to

---

**3.** § 402(q) provides:

(q) "Officer, agent, shop steward, or other representative", when used with respect to a labor organization, includes elected officials and key administrative personnel, whether elected or appointed (such as business agents, heads of departments or major units, and organizers who exercise substantial independent authority), but does not include salaried nonsupervisory professional staff, stenographic, and service personnel.

the charges plaintiff has sought to air in this litigation. The gravamen of the complaint is that defendants violated the fiduciary obligations owed to members of System Board 86. However, the record made in this proceeding established that BRAC defendants have fulfilled their fiduciary responsibilities in every respect, and that as a result, System Board 86 is now in better shape than it has been and is now functioning as a democratic institution.

No good cause for this litigation has been demonstrated as the case law requires. *Dinko v. Wall*, 531 F.2d 68 (2d Cir.1976), *on remand* 421 F.Supp. 207 (S.D. N.Y.1976) (Werker, J.), *aff'd*, 559 F.2d 1202 (2d Cir.1977). On the basis of facts in the record, plaintiff has not shown a reasonable likelihood of success as to his claims and as to material facts alleged, he has failed to show reasonable grounds to credit their existence. Indeed, this record discloses no wrongdoing within the purview of LMRDA by any defendant.

The case is dismissed.

IT IS SO ORDERED.